IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2025

## CURTIS D. STAGGS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lawrence County**
No. 29161      M. Caleb Bayless, Judge

———————————

### No. M2024-00699-CCA-R3-ECN

———————————

The Petitioner, Curtis D. Staggs, appeals from the summary dismissal of his petition for a writ of error coram nobis as time-barred by the applicable one-year statute of limitations. He contends that the coram nobis court should have held a hearing on his petition because the newly discovered evidence he intended to present would have established that he was innocent of the conviction offenses. After review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Curtis D. Staggs, Clifton, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Christi L. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I.      FACTUAL AND PROCEDURAL HISTORY

On August 1, 2011, the Petitioner was convicted by a Lawrence County jury of first degree premeditated murder, felony murder, and aggravated robbery. *See State v. Staggs*, No. M2011-02361-CCA-R3-CD, 2012 WL 5542690, at *1 (Tenn. Crim. App. Nov. 13, 2012), *perm. app. denied* (Tenn. Mar. 5, 2013). The pertinent facts of the underlying offenses, as recounted by this court on direct appeal, are summarized as follows:

This case arises from the [Petitioner]'s participation in a robbery and shooting of the victim, Joann Rigling, who died from the injuries she sustained. The victim was found on June 19, 1992, with one gunshot [wound] above her eye behind the counter of Phillip's One-Stop market in Saint Joseph, Tennessee, and the market cash register was missing. Jimmy Dale Hogan and Tammy Smith were arrested for the murder and robbery. Hogan was convicted after a jury trial but obtained post-conviction relief on appeal, and this Court ordered a new trial. During the reinvestigation of these crimes in preparation for Hogan's retrial, authorities learned additional information that led a Lawrence County grand jury to indict the [Petitioner] for first degree premeditated murder, first degree felony murder, and aggravated robbery for his role in the 1992 murder and robbery.

*Id.* (footnote omitted).

In addition, Dennis Daniels testified at the Petitioner's trial that he was the Saint Joseph Police Chief at the time of the crime. *Id.* at *3. During the initial investigation, the Petitioner contacted Chief Daniels saying he "had information on the robbery and murder" and asked to discuss this information with Chief Daniels. *Id.* at *4. When Chief Daniels and the Petitioner met in 1996, the Petitioner said he had "seen on the news that Hogan and Smith had been arrested." *Id.* The Petitioner told Chief Daniels that Chief Daniels had "two of the three" but still had "one more to go." *Id.* Despite the fact that the Petitioner refused to disclose how he knew a third person was involved, the Petitioner detailed in his statement that Mr. Hogan and Danny Martin went inside the store while Ms. Smith "was drunk [and] passed out in the vehicle." *Id.* According to the Petitioner, Mr. Hogan shot the victim, and Mr. Martin took the cash register. *Id.*

Though the record in the present appeal indicates that Ms. Smith entered a guilty plea in 1998 to her involvement in these offenses, she did not testify at the Petitioner's trial. However, Mr. Hogan did testify at the Petitioner's trial. He stated that, about one week prior to the incident, the Petitioner had approached him about making some "easy money," and the two discussed some of the details of the crime. *Id.* at *5. On the morning of the robbery, Mr. Hogan picked up the Petitioner and let him "clock in" at his construction jobsite. *Id.* at *6. He then drove the Petitioner to the market, and once the two of them were inside, the Petitioner shot the victim, and they took the cash register and left. *Id.* On cross-examination, Mr. Hogan acknowledged that he was arrested for the crimes in 1996 but did not implicate the Petitioner until 2010 when he was interviewed by Tennessee Bureau of Investigation ("TBI") Special Agent Josh Melton. *Id.* at *7. Additionally,

Special Agent Melton testified that he was able to corroborate the details of Mr. Hogan's statement to law enforcement. *Id.* at *3.

Four witnesses, all of whom had been employed by the same construction company as the Petitioner, testified that employees often left for extended periods without it being reflected on their time sheets due to relaxed supervision on the jobsite. *Id.* at *7-8. Oscar McDowell, who worked with the Petitioner at the construction company in 1992, testified that he recalled seeing the Petitioner "first thing in the morning" on the day of the shooting, but he did not see the Petitioner at any other point during the day. *Id.* at *7. Mr. McDowell also recalled two occasions when the Petitioner made detailed comments about the "lack of evidence" regarding the robbery and murder, but he never explained how he came by this knowledge. *Id.* Two additional witnesses, one of whom was incarcerated with the Petitioner at the time of the Petitioner's trial, testified that the Petitioner had told them that he shot the victim in exchange for money. *Id.* at *8.

Raymond DeBartolomies testified on the Petitioner's behalf that he was employed at the same construction company as the Petitioner. *Id.* at *9. On the day of the robbery and murder, the two of them had been working side by side along the highway, and he recalled seeing multiple emergency vehicles driving past them while they were working together. *Id.* However, evidence was introduced that showed Mr. DeBartolomies had started working for the construction company about two months after the robbery and murder. *Id.* at * 9, 10. Ultimately, the jury rejected this alibi evidence and convicted the Petitioner. *Id.* at *10.

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely petition for post-conviction relief, alleging, in pertinent part, that he received the ineffective assistance of counsel because trial counsel failed to argue that the statute of limitations had expired for the aggravated robbery charge and failed to request a jury instruction cautioning the jury to evaluate Mr. Hogan's testimony carefully in light of his agreement with the State. *Staggs v. State*, No. M2014-01416-CCA-R3-PC, 2016 WL 3625503, at *2 (Tenn. Crim. App. June 29, 2016), *perm. app. denied* (Tenn. Oct. 19, 2016). Following examination of the issues, a majority of this court affirmed the denial of post-conviction relief. *Id.* at *3-6.

Thereafter, the Petitioner filed a petition for a writ of error coram nobis on September 12, 2022, wherein he alleged that the one-year statute of limitations for filing such a petition should be tolled due to his presentation of newly discovered evidence that would establish he was actually innocent of the conviction offenses. An affidavit dated

July 13, 2022, containing Ms. Smith's notarized signature was attached to his petition. The affidavit includes the following statement by Ms. Smith:

I am giving this affidavit of my own free will. I have not been threatened or promised anything in exchange for this truthful statement I am giving in this affidavit.

I was part of the case involving Joann[] Riglin[g] and Jimmy Dale Hogan. [The Petitioner] did not have anything to do with the case nor was [the Petitioner] present during the commission of the offense.

I am willing to testify to these facts and do so freely and without any promises.

The Petitioner also submitted an affidavit, stating that he was unaware of this information at the time of his trial and that he only became aware of this information "when his son notified him of the fact after July 13, 2022."

The State filed a response to the petition urging the coram nobis court to deny it as untimely, and it noted that Ms. Smith was known to the Petitioner at the time of trial, as was a statement she had made to law enforcement during the prosecution of the Petitioner's case. The State attached to its response the TBI's record[1] of Ms. Smith's statement, given in 2009, which the State averred had been provided to the Petitioner in discovery prior to his trial. In this statement, Ms. Smith confirmed that on the day of the murder, she, Danny Martin, Mr. Hogan, and the Petitioner were returning from a drug run in Alabama. Over the past three days, Ms. Smith had consumed marijuana, crack cocaine, and alcohol. After consuming more marijuana, Ms. Smith "became unconscious" in the vehicle. When she woke up, "all these persons had blood on them," but she remembered the Petitioner "had more blood on him than the other two persons." Approximately three weeks later, the Petitioner told Ms. Smith that he had shot the victim. Based on this, the State contended that Ms. Smith's desire to "change her story" was merely an inconsistent statement, "not newly discovered evidence as warranted by the statute" governing coram nobis proceedings.

The coram nobis court entered an order on April 16, 2024, wherein it summarily dismissed the petition as untimely, noting that the Petitioner had not "set forth any particularity as to why equitable tolling [was] necessary." Specifically, the coram nobis

---

[1] This record consisted of a narrative of Ms. Smith's interview as recorded in the TBI's investigative report.

- 4 -

court noted that Ms. Smith was well known to the Petitioner at the time of his trial in 2011 and that neither party called her as a witness at this trial. The coram nobis court further explained that the Petitioner knew that Ms. Smith had been convicted of second degree murder in 1998 for her participation in these offenses and that she had met with the TBI in 2009 when she implicated the Petitioner in these crimes. The coram nobis court determined that the Petitioner had not been "effectively denied a reasonable opportunity to present his claims." This timely appeal followed.

## II.    ANALYSIS

There is no dispute the instant petition was filed outside of the applicable one-year statute of limitations. The Petitioner contends that he is entitled to a hearing on his petition based on his presentation of Ms. Smith's affidavit, which asserted that she was willing to testify as to his innocence, and he claims he could not have discovered her willingness to do so at any time during the applicable statute of limitations period. The State responds that the coram nobis court properly found that the petition was time-barred because Ms. Smith was known to the Petitioner at the time of trial and was not a credible source. The State further asserts that Ms. Smith's testimony proffered in the affidavit is, at most, only contradictory or impeachment evidence—based on the prior statement she gave to law enforcement implicating the Petitioner in the underlying offenses—and not evidence of his actual innocence that would allow for tolling of the error coram nobis statute of limitations.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial . . . if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial[.]" Tenn. Code Ann. § 40-26-105(b). The writ of error coram nobis is "an *extraordinary* procedural remedy," designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citing *Penn v. State*, 670 S.W.2d 426, 428 (Ark. 1984)). The petition for a writ of error coram nobis must be in writing and must describe "with particularity" the nature and substance of the newly discovered evidence and demonstrate that the evidence qualifies as newly discovered evidence. *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (quoting *Payne v. State*, 493 S.W.3d 478, 484-85 (Tenn. 2016)). To be considered newly discovered evidence, "the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible." *Id.* (quoting *Payne*, 493 S.W.3d at 484-85). Furthermore, the petitioner must show he or she is "without fault" in failing to present such evidence at the proper time in that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007).

A petition for a writ of error coram nobis must be filed within one year of the date the judgment of the trial court becomes final. Tenn. Code Ann. §§ 27-7-103, 40-26-105. The statute of limitations is calculated from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely, post-trial motion. *Payne*, 493 S.W.3d at 484; *Mixon*, 983 S.W.2d at 670. "[T]he statute of limitations set forth in [Tennessee Code Annotated s]ection 27-7-103 is not an affirmative defense that must be specifically raised by the State in error coram nobis cases[.]" *Nunley*, 552 S.W.3d at 828. Instead, a petition for a writ of error coram nobis may be summarily dismissed if it fails to show on its face that it has been timely filed because the timely filing requirement in Tennessee Code Annotated section 27-7-103 is an essential element of a coram nobis claim. *Id.*

However, due process tolling is permitted for coram nobis claims under limited circumstances. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001). Due process requires the tolling of a statute of limitations period when a petitioner would otherwise be denied "an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Id.* at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period. *Nunley*, 552 S.W.3d at 828-29 (citing *Wilson*, 367 S.W.3d at 234). In accordance with the extraordinary nature of the writ, petitioners must plead specific facts demonstrating why they are entitled to equitable tolling of the statute of limitations. *Id.* at 829 (quoting *Harris v State*, 301 S.W.3d 141, 153 (Tenn. 2010) (Koch, J., concurring in part)). Furthermore, "[a] prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief." *Id.* (citations omitted).

Our supreme court has recently elaborated on the procedure a court is to take when a petitioner files an untimely petition for coram nobis relief and seeks tolling of the one-year statute of limitations, as well as the standard to be applied. *See Clardy v. State*, 691 S.W.3d 390 (Tenn. 2024). The *Clardy* court noted that the "analysis for relief on the merits of the petition is separate and distinct from the analysis for whether the statute of limitations may be tolled." *Id.* at 399. Where a petitioner seeks the tolling of the one-year statute of limitations for an untimely-filed petition for a writ of error coram nobis,

> the coram nobis court should first ascertain whether the petition cites new evidence discovered after expiration of the limitations period, and whether the coram nobis petition shows it was filed no more than one year after the petitioner discovered the new evidence. If so, the coram nobis court should

assume *arguendo* the veracity of the new evidence cited in the coram nobis petition, for the purpose of assessing whether to toll the statute of limitations. To grant tolling, the coram nobis court must find that the new evidence would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that the petitioner did not commit the crime.

*Id.* at 409 (citing *Keen v. State*, 398 S.W.3d 594, 612 (Tenn. 2012)). Only after determining that due process requires the tolling of the statute of limitations should the trial court consider the merits of the petitioner's claims. *Id.*

Regarding the application of the clear and convincing standard, the *Clardy* court explained that

the trial court must determine that the evidence offered . . . is not vague and uncertain. The clear and convincing evidence standard is more exacting than preponderance of the evidence but less exacting than beyond a reasonable doubt, and it requires that there [be] no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*Id.* at 408 (quoting *State v. Jones*, 450 S.W.3d 866, 893 (Tenn. 2014)). Thus, "the new evidence of actual innocence, if credited, should leave the [coram nobis] court with no serious or substantial doubt that the petitioner is actually innocent." *Id.* This court reviews whether due process principles require tolling the statute of limitations, a mixed question of law and fact, "de novo with no presumption of correctness." *Nunley*, 552 S.W.3d at 830 (quoting *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010)).

We agree with the State that the trial court's summary dismissal of the petition was proper. The petition was filed well outside the one-year statute of limitations, and the information contained in Ms. Smith's affidavit does not constitute evidence that was unavailable to the Petitioner at the time of trial through the exercise of reasonable diligence. As the coram nobis court noted, Ms. Smith was well known to the Petitioner at the time of his trial in 2011, and neither party called her as a witness. The Petitioner knew that Ms. Smith had been convicted of second degree murder in 1998 for her participation in these offenses and that she met with the TBI in 2009 and implicated the Petitioner in these crimes. Moreover, we note that the Petitioner was represented by counsel and pursued post-conviction relief following his trial and that such relief was denied. The coram nobis court correctly determined that the Petitioner was not denied a reasonable opportunity to pursue any allegations related to the information contained in Ms. Smith's affidavit, *i.e.*,

he was not "without fault" in failing to pursue his claim at any earlier time. *See Moore v. State*, No. W2015-00626-CCA-R3-ECN, 2015 WL 6873181, at *3 (Tenn. Crim. App. Nov. 6, 2015) (concluding that the grounds for relief did not arise after the limitations period commenced because "the expert's CV indicate[d] that he was available to testify as early as 2005, and the [p]etitioner failed to explain why he did not call the expert witness to testify at trial in response to the State's expert").

Moreover, Ms. Smith's affidavit does not clearly and convincingly establish the Petitioner's actual innocence. While the coram nobis court is required to assume that the evidence is true and credible, it need not consider it in isolation from the other evidence introduced in the petitioner's case. *See McKissack v. State*, No. M2024-01110-CCA-R3-ECN, 2025 WL 1198845, at *6 (Tenn. Crim. App. Apr. 24, 2025) (noting that a codefendant's recanted testimony did not "clearly and convincingly" establish petitioner's actual innocence when considered in concert with other evidence of petitioner's guilt). Evidence at trial showed the Petitioner's involvement in the crime, including his having intimate knowledge of the details of the offense, as well as his telling multiple people that he shot the victim in exchange for money. Additionally, while Ms. Smith's affidavit presents a new source for the claim that the Petitioner was not present at the market during the robbery, the jury heard testimony making the same assertion from a witness called by the Petitioner, which it rejected. Finally, were Ms. Smith called to testify in favor of the Petitioner, and she gave testimony consistent with her statement in the affidavit, then she certainly would have been impeached with the conflicting statement she gave to law enforcement in 2009 wherein she implicated the Petitioner. *See Alston v. State*, No. W2023-00783-CCA-R3-ECN, 2024 WL 3898575, at *9 (Tenn. Crim. App. Aug. 22, 2024), *perm. app. denied* (Tenn. Jan. 23, 2025) (noting that the contradictory nature of the various affidavits themselves, as well as with the evidence presented at trial, did not meet the clear and convincing standard of *Clardy*).

Under these circumstances, the coram nobis court did not err in its summary dismissal of the petition. The Petitioner is not entitled to relief.

### III. CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the coram nobis court.


        s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE